**UNITED STATES of America, Plaintiff,**
**v.**
**Sorkis J. WEBBE, Defendant.**

**No. CR–R–80–25–ECR.**

United States District Court,
D. Nevada.

Feb. 7, 1983.

Geoffrey A. Anderson, Sp. Atty., Las Vegas Strike Force, Las Vegas, Nev., Marvin L. Rudnick, Sp. Atty., Los Angeles Strike Force, Los Angeles, Cal., for plaintiff.

Albert J. Krieger, Miami, Fla., for defendant.

## ORDER

EDWARD C. REED, Jr., District Judge.

The defendant has moved to dismiss the two-count indictment herein on the basis of the doctrine of collateral estoppel which applies in criminal cases as part of the constitutional protection against double jeopardy. *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). Defendant contends that since he was acquitted of the conspiracy count in the companion case of *United States v. Linton,* CR–R–80–24–ECR (*Linton*), prosecution of this action for filing false income tax returns is barred because the conspiratorial agreement litigated in *Linton* is a necessary element to be proved here.

The facts and circumstances which gave rise to the indictment in this case as well as *Linton* are integrally related. Both indictments were returned by the same grand jury on the same day and relate to an alleged scheme by the defendants to defraud the Central States, Southeast and Southwest Areas Pension Fund of the International Brotherhood of Teamsters (Pension Fund) through payment of "kickbacks" out of loan proceeds obtained from the Pension Fund to finance a construction project at the Aladdin Hotel in Las Vegas, Nevada. More specifically, the basis for the instant prosecution is the allegation that defendant Webbe failed to account in his federal income tax returns for a substantial portion of the income he received in the form of "fees, commissions and kickbacks" during the Aladdin Hotel construction project. The gravamen of defendant's motion is that the government must, in this action, prove that the source of the income defendant failed to report is the very criminal conspiracy of which defendant was previously acquitted and which is an essential element of the instant indictment that cannot be relitigated.

■ The law of collateral estoppel as applied to criminal cases in this circuit is set forth in *United States v. Hernandez,* 572 F.2d 218, 220 (9th Cir.1978), as follows:

"When an issue of fact or law is actually litigated and determined by a final and valid judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." (Restatement of the Law, 2d, Judgments, § 68 (Tent. Draft No. 1, March 28, 1973).)

"The collateral estoppel analysis involves a three step process:

"(1) An identification of the issues in the two actions for the purpose of determining whether the issues are sufficiently similar and sufficiently material in both actions to justify invoking the doctrine; (2) an examination of the record of the prior case to decide whether the issue was 'litigated' in the first case; and (3) an examination of the record of the prior proceeding to ascertain whether the issue was necessarily decided in the first case."

In this context the defendant carries the burden of proving that the fact-finder resolved in his favor at the first trial the very issue he seeks to foreclose from consideration at the second trial. *United States v. Lasky,* 600 F.2d 765, 769 (9th Cir.1979). "The burden is particularly onerous where the acquittal in the first trial involves the crime of conspiracy." *United States v. Clark,* 613 F.2d 391, 400 (2d Cir.1979); *see United States v. Dipp,* 581 F.2d 1323 (9th Cir.1978).

Pursuant to *Ashe v. Swenson, supra,* 397 U.S. at 444, 90 S.Ct. at 1194, the Court in determining what issues were necessarily resolved in the first trial should inquire "whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." Such inquiry should be practical and involve examination of "the record of [the] prior proceeding, taking into account the pleadings, evidence, charge and other relevant matter." *Id.* This Court, which presided over the lengthy conspiracy trial in *Linton,* does not deem it necessary or appropriate to review all of the evidence and testimony presented during that proceeding. Rather, under these circumstances it is sufficient that the court examine the indictments, the instructions given the jury, and the relevant portions of argument presented by counsel during the conspiracy trial.

In examining what the jury decided and how the judgment of acquittal on the conspiracy count bears on the second trial for tax evasion, the basis for the general verdict usually cannot be demonstrated with certainty. *United States v. Seijo,* 537 F.2d 694, 697 (2d Cir.1976). The ultimate issue decided by the jury in the *Linton* trial, of course, was the absence of a conspiracy among the defendants. Among other things, receipt of certain funds by defendant Webbe and others were charged as overt acts of the conspiracy in the *Linton* indictment. More generally, the conspiracy count also alleged that it was ". . . a part of said conspiracy that Lee Linton and Sorkis Webbe would convert to their own use and benefit money and property obtained from the Pension Fund as a result of the submission of false and fraudulent written billings and pay requests."

The Court cannot accept the underlying premise of defendant's motion. That is, the existence of the conspiracy as the source of the income at issue in this case does not appear to be a necessary element of the government's case. The parties agree that the essential elements of the offense charged here are as set forth in *United States v. Bishop,* 412 U.S. 346, 357–358, 93 S.Ct. 2008, 2015–16, 36 L.Ed.2d 941:

1. The wilful making and subscribing of a return, statement or other document;
2. The return document must contain a written declaration that it was made under penalties of perjury;
3. The maker must not believe return, statement or other document to be true and correct as to every material matter.

Defendant's position is that in order to prove that the approximately $157,027.00 allegedly received by the defendant in the

form of "commissions, fees, and kickbacks" during 1975, which defendant failed to report as income as alleged in the indictment, the government must show that such sums were received as a result of the conspiracy tried before a jury in the *Linton* case.

The problem presented here is similar to that confronted by the Court in *United States v. Mock,* 604 F.2d 341 (5th Cir.1979), where the appellant was acquitted in a prosecution for conspiracy to import marijuana and then tried and convicted in a subsequent proceeding for tax evasion relating to failure to report income allegedly earned from the marijuana importation conspiracy. There, "... the government urged in the tax evasion case that appellant received income from the very conspiracy operation of which he had been acquitted in the first trial." *Id.* at 344. The Court further stated that:

It matters not that appellant's acquittal on the conspiracy charge does not negate the possibility that he may otherwise have derived income from the sale or distribution of marijuana. The fundamental error here is that the government reintroduced the identical facts and theory of the facts which were rejected at the first trial. For purposes of any subsequent prosecution of appellant, appellant's acquittal has conclusively established that appellant did not participate in a marijuana conspiracy with Alvarez and the others mentioned by Kilgore during the time frame of the first indictment—January to June, 1972. Consequently, the government is barred from arguing or trying to establish, for any purpose, that appellant was part of that conspiracy.

It is not reasonable to assume that the government needs to show existence of a conspiracy in order to prove that defendant did receive and fail to report the sums in question. Indeed, the question of whether defendant was a member of a conspiracy to defraud the Pension Fund was the ultimate issue resolved in his favor at the first trial and may not be litigated again in this proceeding. *United States v. Castro,* 629 F.2d 456, 465 (7th Cir.1980). The government may, however, charge defendant with a different crime, such as tax evasion, which arises out of the same conduct. *United States v. Mespoulede,* 597 F.2d 329 (2d Cir. 1979).

 Based upon its view of the relevant record from the *Linton* conspiracy trial, the Court is convinced that a rational jury could have based its verdict upon several other grounds not related to the issues which are involved here regarding income allegedly received but not reported by defendant. During the *Linton* trial defendant, as well as the other defendants, relied upon among others the defense that no agreement to defraud the Pension Fund ever existed. In other words, the factual issues involved in the indictment now under consideration were not necessarily decided by the judgment of acquittal returned by the jury on the conspiracy count in the *Linton* case.

IT IS HEREBY ORDERED that defendant's motion to dismiss filed on December 20, 1982, is DENIED.